UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FELDER'S COLLISION PARTS, INC.

VERSUS

GENERAL MOTORS COMPANY ET AL

CIVIL ACTION

NO. 12-646-JJB-SCR

**RULING ON DEFENDANT'S MOTION TO DISMISS FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

This matter is before the Court on a Motion (doc. 54) to Dismiss First Amended and Supplemental Complaint brought by Defendants, General Motors LLC ("GM"), and All Star Advertising Agency, Inc., All Star Chevrolet North, L.L.C., and All Star Chevrolet, Inc. (collectively referred to herein as "All Star").  Plaintiff, Felder's Collision Parts, Inc. ("Felder's"), has filed an opposition (doc. 56), to which the Defendants have filed a reply (doc. 59).  Oral argument is unnecessary.  The Court's jurisdiction exists pursuant to 28 U.S.C. § 1331.  For the reasons stated herein, the Defendants' Motion (doc. 54) is GRANTED.

**I.     Background**

Felder's has brought this action pursuant to several federal and state antitrust statutes as well as other Louisiana state laws.  Specifically, Felder's has brought claims pursuant to Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1,2, the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"), La. Rev. Stat. § 51:1401, *et seq.*, and several other Louisiana revised statutes, La. R.S. §§ 51:122, 123, 124, 137, and 422.  Additionally, Felder's contends that GM, All Star, and John Doe Defendants 1-25 ("Doe Defendants") should be held jointly and severally liable for conspiring to aforementioned violations under La. Civ. Code art. 2324.

1

The facts of this case have been detailed in a previous ruling and therefore will be summarily addressed herein. The suit arises out of a price incentive program called "Bump the Competition" in which distributors like All Star can sell GM's original equipment manufacturer parts ("OEM parts") at a deep discount below its costs to consumers and then apply to GM for a rebate to account for the lost cost. The distributors are also entitled to receive a lost profit. Felder's alleges that this program is only available for OEM parts that have an aftermarket equivalent. Felder's further alleges that the program is nothing more than a predatory pricing scheme intended to drive aftermarket part dealers out of the market in an effort to obtain monopoly power.

Defendants filed a Motion (doc. 22) to Dismiss Felder's complaint arguing that the claims were insufficiently pled. Upon reviewing the complaint and the memorandum filed in both support and opposition to the motion to dismiss, the Court agreed with the Defendants but granted Felder's leave to cure the complaint's insufficiently pled claims (doc. 32). Though there were many deficiencies in Felder's complaint, the Court found that the most glaring were that the complaint failed to allege facts to adequately define the proper geographic market, demonstrate All Star's market power in the relevant market, and demonstrate that All Star participated in predatory below-cost pricing. The Court set forth a detailed roadmap, firmly rooted in federal antitrust jurisprudence, to guide Felder's as it cured its insufficiently pled claims. Further, Felder's was allowed to conduct discovery to unearth facts to support its claims before it was required to file its Amended and Supplemental Complaint ("Amended Complaint") (doc. 47).

All Star now argues by way of the motion to dismiss presently before the Court, that Felder's has failed to heed the Court's instruction and therefore failed to sufficiently plead its claims. In response, Felder's argues that it has provided the required factual matter to support

each and every one of its claims. Thus, its Amended Complaint is sufficient to withstand Felder's motion to dismiss. After considering the parties' arguments and reviewing the Amended Complaint, the Court is ready to rule.

## II.     Discussion

### A.  Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When reviewing the complaint, a court must accept all well-pleaded factual allegations as true. *C.C. Port. Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995). In order to survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court need not determine at this preliminary stage whether the plaintiff's claims will ultimately succeed on the merits. *Id*. at 556. Instead, a court must identify the factual allegations entitled to the presumption of truth and determine whether they state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### B.  Federal Antitrust Claims

Felder's would like this Court to believe that at the heart of this case "is a fundamental legal question—whether the All Star Defendants' practice of selling parts to collision centers and body shops at a price below the cost paid to GM for a particular part constitutes predatory pricing." *Opposition*, Doc. 56, at 13. However, what is fundamental to any antitrust analysis is a proper definition of the relevant market and a defendant's power to detrimentally effect competition therein. Indeed, this inquiry into both market definition and market power is fundamental to properly evaluating the plausibility of a predatory pricing scheme. *See Ruling*,

3

Doc. 32, at 17 (recognizing that "market power and market definition are essential to the analysis of whether Felder's could be (or is being) driven out of the market due to Defendants' conduct."); *see also A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1369 (7th Cir. 1989) ("Only if market structure makes recoupment feasible need a court inquire into the relation between price and cost."). For this reason, the Court will first determine whether Felder's has properly pled the relevant market definition before delving into Felder's substantive antitrust claims.

i.  **Market Definition**

An adequate definition of the relevant market is critical because it "provides the framework against which economic power can be measured." *Jayco Sys., Inc. v. Savin Bus. Machines Corp.*, 777 F.2d 306, 319 (5th Cir. 1985). The relevant market is determined by analyzing the relevant geographic and product markets. *Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 626-28 (5th Cir. 2002). The Fifth Circuit has recognized that a trial court may dismiss a § 2 claim for a plaintiff's failure to define the relevant market. *Jayco Sys.*, 777 F.2d at 319; *see also Apani Sw.*, 300 F.3d at 628 (explaining that deficient market definition may be grounds to grant a motion to dismiss a § 1 claim).[1] The complaint must account for cross-elasticity of demand, i.e., whether a product is "reasonably interchangeable by consumers for the same purposes." *PSKS, Inc. v. Leegin Creative Leather Products, Inc.*, 615 F.3d 412, 417 (5th Cir. 2010). A plaintiff must offer evidence demonstrating where consumers currently purchase the product and where alternative products or alternative sources of the

---

[1] According to the Fifth Circuit,
> Whether a relevant market has been identified is usually a question of fact; however, in some circumstances, the issue may be determined as a matter of law. Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient, and a motion to dismiss may be granted.

*Apani*, 300 F.3d at 628 (internal quotations and citations omitted).

product could be found if a competitor raises prices. *Doctor's Hosp. v. Southeast Med. Alliance*, 123 F.3d 301, 311 (5th Cir. 1997); *see also Apani*, 300 F.3d at 628 (explaining that geographic market "must correspond to the commercial realities of the industry and be economically significant.").

As it pertains to the relevant product market, the Court previously found that the allegations found in the complaint were sufficient to withstand a motion to dismiss but cautioned that Felder's failure to specify the relevant market(s) was something that needed to be corrected in the Amended Complaint. *Ruling*, Doc. 32, at 11. Felder's has done this by defining the market as one for "automobile collision parts for which there is an aftermarket alternative and that are compatible with GM vehicles." Doc. 50, at ¶ 10. The issue is whether Felder's has alleged enough facts to sufficiently define the relevant geographic market.

The Court found Felder's definition of the relevant geographic market to be insufficiently pled. Specifically, the Court found that "Felder's does not address whether consumers could practically turn to other geographic areas for parts, nor does Felder's specify whether competing dealers from outside areas could come into the market." *Ruling*, Doc. 32, at 11. To cure this deficiency, the Court instructed Felder's to "allege further detail regarding the number of competitors in the geographic area, the area of effective competition, whether buyers can practically turn to other sellers for supplies, and whether other dealers can reasonably move into the market to compete." *Id.* at 12.

In its motion to dismiss, All Star argues that Felder's has failed to follow the Court's instructions. All Star acknowledges that Felder's has included information listing the counties in Louisiana and Mississippi in which both it and All Star compete. Nevertheless, All Star avers that Felder's Amended Complaint remains deficient because Felder's neither mentions whether

5

body shops in these counties obtain collision parts from dealers outside of the geographic area, nor whether outside dealers in other parts of the country could move into the market to compete. Furthermore, Felder's fails to mention whether it operates in areas outside of the proposed geographic market. Felder's responds by arguing that it has pled a sufficient geographic market. In addition to highlighting the counties listed in which both it and All Star compete, Felder's points to the facts it added concerning competitors who have been driven out of the market, competitors who have not entered into the market to compete, and discussed how difficult it is to enter into the proposed market. All Star replies by arguing that Felder's is merely attempting to persuade the Court to make impermissible inferences about the definition of the geographic market without alleging the requisite facts. Additionally, All Star argues that Felder's proposed geographic market is implausible as a matter of law because the Amended Complaint establishes, by including a national dealer of after-market parts, that the geographic market is larger than that demonstrated by the listed counties.

After reviewing the Amended Complaint, the Court disagrees with All Star's contention that Felder's has completely failed to follow the Court's instructions. Indeed, Felder's has included information about a competitor in the proposed market in its discussion of Keystone Automotive Industries, Inc. ("Keystone"), the country's largest after-market parts distributor. Doc. 50, at ¶ 54. This new allegation also demonstrates whether and where buyers can turn to other sellers for supplies. Finally, Felder's included allegations to support an inference that it is difficult for other dealers to reasonably move into the proposed market to compete. *Id.* at ¶ 48-50. Nevertheless, the Court agrees with the Defendant's ultimate contention that Felder's has failed to adequately define the geographic market. Critically, Felder's own allegations contradict its proposed geographic market.

6

First, Felder's amendment includes a national seller of after-market parts as a competitor in the proposed geographic market. While it does not naturally follow that the inclusion of a national seller leads to the conclusion that the geographic market should be national in scope, it does lead to the plausible inference that the actual geographic scope of competition is larger than that which is proposed in the Amended Complaint. It further leads to more questions as to the existence of other national or regional sellers, which may not be "the country's largest aftermarket parts distributor," but nonetheless are sellers to which buyers in the proposed market could reasonably turn. Second, Felder's alleges that a direct competitor operating in the proposed geographic market was forced out of the market by the alleged predatory pricing scheme. Doc. 50, at ¶ 53. The fact that this direct competitor is located over 100 miles away from any of the counties also included in the proposed geographic market also leads to the plausible inference that the geographic market is larger than presently defined in the Amended Complaint. Therefore, the Court must conclude that the proposed geographic market is too narrowly drawn and thus insufficiently pled. *Wampler v. Southwestern Bell Telephone Co.*, 597 F.3d 741 (5th Cir. 2010) (affirming the dismissal of a plaintiff's claim when the proposed geographic market was too narrowly defined to represent a plausible geographic market).

In sum, the Court finds that Felder's has failed to sufficiently define the effective area of competition because the Amended Complaint's allegations belie its own alleged proposed geographic market. For this reason, Felder's has failed to adequately plead its antitrust claims because they are all dependent upon a sufficient definition of the relevant market. *See Apani*, 300 F.3d at 632-33 (affirming the district court's dismissal of all of the plaintiff's antitrust claims for

7

failure to adequately define the geographic market).  Accordingly, Felder's federal antitrust claims are dismissed.[2]

### i.     Predatory Pricing

Though it has found that the predatory pricing claim has been insufficiently pled due to Felder's failure to properly allege the geographic market, the Court will nevertheless briefly address this claim.  This is due primarily in part to Felder's request for reconsideration of the Court's previous ruling in which the Court held that whether the dealers engaged in below-cost pricing should be determined at the time that the dealers were reimbursed.

Rule 54(b) of the Federal Rules of Civil Procedure provides that:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b).  A Court retains jurisdiction over all claims in a suit and may alter its earlier decisions until a final judgment has been issued. *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. 2002).  "District courts have considerable discretion in deciding whether to reconsider an interlocutory order." *Keys v. Dean Morris, LLP*, 2013 WL 2387768, at *1 (M.D. La. May 30, 2013).  "Although courts are concerned with principles of finality and judicial economy, 'the ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law.'" *Id.* (quoting *Georgia Pacific, LLC v. Heavy Machines, Inc.*, 2010 WL 2026670, at *2 (M.D. La. May 20, 2010)).

---

[2] The Court's findings as to the sufficiency of the federal antitrust claims apply with equal force to Felder's claims brought pursuant to state law antitrust statutes.  Because the state statutes track the Sherman Act almost verbatim, "Louisiana courts have turned to the federal jurisprudence analyzing those parallel federal provisions for guidance." *Southern Tool & Supply, Inc. v. Beerman Precision, Inc.*, 862 So.2d 271, 278 (La. App. 4 Cir. 11/26/03).  Having found that the federal antitrust allegations are insufficient as pled, the Court must also find that the alleged violations of state law are likewise insufficiently pled.

Nevertheless, "rulings should only be reconsidered where the moving party has presented substantial reasons for reconsideration." *Louisiana v. Sprint Communications Co.*, 899 F. Supp. 282, 284 (M.D. La. 1995).

After review, the Court does not find substantial grounds for reconsideration pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Felder's has not presented "substantial reasons for reconsideration." Instead, Felder's attempts to persuade this Court that the case law that it has already thoroughly evaluated and found to apply to the facts of this case is unavailing. Critically, Felder's attempts to do so without citing a single case, law review article, advisory opinion, or any administrative guidance to support its position.[3] Accordingly, Felder's request for reconsideration is denied.

With its holding in place, the Court turns to whether Felder's has amended its complaint to allege below-cost pricing in line with Fifth Circuit precedent. The Court previously surmised that Felder's had failed to originally do so as a result of a lack of information related to the Defendants' costs and profits, or alternatively, the use of an incorrect formula to calculate average variable costs. The imbalance of information was cured when the Defendants were compelled by this Court to turn over relevant documents. After reviewing the Amended Complaint, the Court finds that Felder's has failed to amend to allege below-cost pricing pursuant to the Fifth Circuit standard as instructed by the Court in its previous ruling. Therefore, even if Felder's had sufficiently pled the relevant geographic market, it would still have failed to properly plead a predatory pricing scheme.

### C. LUTPA

---

[3] The Automotive Body Parts Association has filed a Motion for Leave to File an Amicus Brief in Support of Plaintiffs (doc. 57). The Court has in its broad discretion elected not to grant leave. The amicus brief deals primarily with the issue of monopoly leveraging which is not an issue that is before the Court. Accordingly, the Motion (doc. 57) is denied.

The Court previously found that Felder's had failed to sufficiently plead a claim under LUTPA but granted Felder's leave to amend its claim. *Ruling*, Doc. 32, at 31. The Court agreed with the Defendants' reading of *Van Hoose v. Gravois*, 70 So.3d 1017, 1024 (La. App. 1 Cir. 7/7/11) and found that Felder's failure to sufficiently allege an antitrust violation prevented it from being able to sufficiently plead a violation of LUTPA. *Id.* The Court also found that Felder's failed to specifically allege that the Defendants committed fraud, misrepresentation, deception, or unethical conduct. *Id.* Instead, Felder's asserted that the Defendants engaged in an effort to sell repair parts below cost, thereby committing an unfair or deceptive practice as contemplated by LUTPA. *Id.* This the Court found to be "nothing more than a naked assertion followed by a recitation of the applicable law." Neither a naked assertion nor a mere recitation is entitled to the presumption of truth. *Ashcroft*, 556 U.S. at 678. Given that Felder's has again failed to sufficiently plead an antitrust violation and failed to amend its LUTPA claim to specifically allege that the Defendants committed fraud, misrepresentation, deception, or unethical conduct, the Court has no choice but to find that Felder's LUTPA claim must be dismissed.

### D.  Solidary Liability Under La. Civ. Code art. 2324

La. Civ. Code art. 2324 provides the basis for solidary liability under Louisiana law. The article provides in pertinent part: "He who conspires with another person to commit an intentional and willful act is answerable, in solido, with that person for the damage caused by that act." *Id*. Courts have clarified that Art. 2324 "does not recognize an independent cause of action for civil conspiracy." *Rhyce v. Martin*, 173 F. Supp. 2d 521, 535 (E.D. La. 2001). Rather, the actionable element is the wrong perpetrated by the actors involved in the conspiracy. *Id*.

Stated differently, the conspiracy is the mechanism that must exist for a plaintiff to recover under Art. 2324. The mere existence of a conspiracy, however, is not a basis for liability.

The Court previously found that Felder's failure to plead the existence of a conspiracy made its claim for solidary liability deficient. *Ruling,* Doc. 32, at 32. Though Felder's has amended its complaint to include allegations concerning the existence of a conspiracy, the Court has found that these allegations are insufficiently pled and therefore dismissed. Accordingly, Felder's claim for solidary liability is dismissed.

### III.    Conclusion

For the reasons stated herein, the Defendants' Motion (doc. 54) to Dismiss is GRANTED. Accordingly, all of the claims contained in the Amended Complaint (doc. 50) are DISMISSED.

The Motions (docs. 57 & 60) filed by the Automotive Body Parts Association as amicus curiae are DISMISSED AS MOOT.

Signed in Baton Rouge, Louisiana, on April 23, 2014.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**